United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA G. BRATTON, et al.,<br>　　　　Plaintiffs,<br>　　v.<br>FCA US LLC,<br>　　　　Defendant. | Case No. 17-cv-01458-JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**<br><br>Re: Dkt. No. 77 |

## I.　INTRODUCTION

Plaintiffs filed this action in San Francisco County Superior Court, asserting claims against Defendant FCA U.S. LLC ("FCA") under the Song Beverly Consumer Warranty Act ("Song Beverly Act"), Cal. Civ. Code sections 1790, *et seq.* Defendants removed the action to this Court on the basis of diversity jurisdiction and the parties eventually entered into a settlement agreement. Plaintiffs now bring a Motion for Attorneys' Fees, Costs and Expenses ("Motion") as the prevailing parties under California Civil Code section 1794(d). The Court held a hearing on the Motion on October 5, 2018 and Plaintiffs filed supplemental materials in support of the Motion following the hearing. *See* Docket Nos. 89-91. For the reasons stated below, the Motion is GRANTED in part and DENIED in part.[1]

## II.　BACKGROUND

### A.　Factual Background

Plaintiffs purchased a new 2011 Jeep Grand Cherokee on August 30, 2010, for a total purchase price of $40,690.80 inclusive of taxes, fees, optional GAP insurance and financing charges on a

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

six-year loan. Complaint ¶ 9 & Ex. 1 (Sales Contract). The vehicle was distributed by FCA, which provided an express written warranty. *Id*. ¶ 5. According to Plaintiffs' counsel, in the first four years Plaintiffs owned the vehicle they experienced numerous problems, many of them electrical, and had to take it to the authorized repair facility eleven times for repair and recalls. Declaration of Steve Mikhov in Support of Plaintiffs' Motion for Attorneys' Fees, Costs and Expenses ("Mikhov Decl.") ¶¶ 4-5.[2] Eventually, Plaintiffs concluded that the vehicle had serious defects that could not be repaired and asked FCA to repurchase it. *Id*. ¶ 7. After FCA refused to do so, Plaintiffs engaged Knight Law Group, LLP ("Knight Law") and brought this action. *Id*. ¶¶ 8-9.

Plaintiffs filed their initial complaint on November 22, 2016, alleging willful violations of the Song Beverly Act and seeking civil penalties. On February 28, 2017 Plaintiffs served written discovery on FCA, which consisted of 65 requests for admission, 95 requests for production of documents, 21 form interrogatories and 102 special interrogatories. *Id*. ¶ 10. Plaintiffs' counsel used existing files as templates for the written discovery and billed for 4.3 hours of attorney time for the time spent on it. *Id.*

On March 30, 2017, FCA removed the action to this Court on the basis of diversity jurisdiction.[3] The parties attended a mediation on July 19, 2017 but the case did not settle. *Id*. ¶ 12. A settlement conference was set for August 25, 2017, but on August 24, 2017 Plaintiffs requested to be excused from attending because they could not take time off work. *See* Docket No. 43. The Court denied Plaintiffs' request and granted FCA's request that the settlement conference be reset to a date when Plaintiffs could attend. *See* Docket No. 45.

A settlement conference occurred on February 12, 2018. Docket No. 68. After the settlement conference, the parties agreed on a settlement whereby FCA would pay Plaintiffs $80,000 plus attorneys' fees, costs and expenses in an amount to be determined by agreement or by motion.

---

[2] FCA objects to these paragraphs on the basis that Mikhov lacks personal knowledge and that the statements are hearsay. *See* Docket No. 80. Because the Court does not rely on these statements for their truth but only as a reflection of the position Plaintiffs took in this case, FCA's objections to these paragraphs are overruled.
[3] The Court denied a motion to remand on June 22, 2017. *See* Docket No. 34.

2

Mikhov Decl. ¶ 18. Because the parties have been unable to agree on the amount of fees and costs that should be awarded, Plaintiffs bring the instant motion.

### B.     Contentions of the Parties

In the Motion, Plaintiffs requested an award of attorneys' fees in the amount of $48,390.00, which included a multiplier of 1.5 of Plaintiffs' lodestar amount of $32,260.00. Motion at 1. They also sought $2,942.99 in costs. *Id*. In their Reply brief, Plaintiffs conceded that they mistakenly included the time billed for preparing a request to be excused from the scheduled August 25, 2017 settlement conference ($227.50) and time spent preparing for and attending that settlement conference ($4,940.00), which did not actually occur. With this adjustment, Plaintiffs' requested lodestar amount is $27,092.50. In addition, at the motion hearing, Plaintiffs conceded that they unintentionally included in their cost request costs associated with the settlement conference that did not occur; therefore, they filed a revised bill of costs following the motion hearing with a corrected amount. With these adjustments, Plaintiffs now seek attorneys' fees in the amount of $40,638.75 (using the requested 1.5 multiplier) and costs in the amount of $2,385.39. Plaintiffs have provided timesheets describing the work performed, as well as fee award decisions by other courts that Plaintiffs contend establish that the amount of fees they request is reasonable.

FCA contends Plaintiffs have not provided evidence that counsel's rates are reasonable and argues that the overall amount requested is unreasonable, emphasizing that if the Court allows the 1.5 multiplier, the hourly rates charged by counsel will be as high as $750/hour. FCA asserts that it was improper to provide the Court with copies of fee awards in other cases Knight Law has litigated because these orders have no precedential value. FCA further accuses Plaintiffs of "cherry-picking" and violating their duty of candor to the Court by "failing to provide the Court with the numerous other orders in which their fee applications have been reduced and where courts have found that either no multiplier was warranted or a downward multiplier was applied." Opposition at 9. FCA does not provide citations to any such cases, however. FCA also challenges Plaintiffs' inclusion of the time spent on the request to be excused from the August 25, 2017 settlement conference and the time allegedly spent at that settlement conference.

3

Finally, FCA argues that no enhancement is appropriate because the case was straightforward and involved no particular complexity. In addition, it argues, the contingent nature of Plaintiffs' counsel's representation does not justify an enhancement because Plaintiffs have not provided a copy of their fee agreement showing that representation was, in fact, on a contingent basis. If anything, it argues, a *negative* multiplier should be used.

Along with its opposition brief, FCA filed 58 evidentiary objections to the Mikhov Declaration. These include a request that the Court disregard the fee award orders attached to the Mikhov Declaration as Exhibits D-VV, which FCA says are inadmissible hearsay that have no evidentiary value.

### III. ANALYSIS

#### A. Legal Standard

In diversity actions, federal courts look to state law in determining whether a party has a right to attorneys' fees and how to calculate those fees. *Mangold v. Cal. Pub. Util. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). Under California law, buyers who prevail in an action under the Song Beverly Act are entitled to "the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code section 1794(d). A party is a prevailing party if the court, guided by equitable principles, decides that the party has achieved its "main litigation objective." *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal.App.4th 140, 150–51 (2006); *see also Wohlgemuth v. Caterpillar Inc.*, 207 Cal. App. 4th 1252, 1262 (2012) (holding that "consumers who successfully achieve the goals of their litigation through a compromise agreement" may recover attorneys' fees and costs as prevailing parties under the Song Beverly Act).

California courts have found that in awarding fees under the Song Beverly Act, the trial court must "make an initial determination of the actual time expended; and then [must] ascertain whether under all the circumstances of the case the amount of actual time expended and the monetary charge being made for the time expended are reasonable." *Nightingale v. Hyundai Motor Am.*, 31 Cal. App. 4th 99, 104 (1994). In evaluating the reasonableness of counsel's

4

charges, the court may consider "factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved." *Id*. The prevailing party has the burden of showing that the attorneys' fees it requests are reasonable. *Id*.

California courts have further held that the Song Beverly Act permits the trial court to award a multiplier where it deems appropriate under the lodestar adjustment method. *Robertson v. Fleetwood Travel Trailers of California, Inc*., 144 Cal. App. 4th 785, 819 (2006) (citing *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001)). In *Ketchem*, the California Supreme Court explained:

> [T]he lodestar is the basic fee for comparable legal services in the community; it may be adjusted by the court based on factors including, as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award. . . . The purpose of such adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services.

*Ketchum v. Moses*, 24 Cal. 4th at 1132 (citing *Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977)). A court may also, "for an appropriate reason," make a downward adjustment under the lodestar adjustment method, for example where the court finds that time billed was excessive or that the tasks performed were in connection with unrelated claims upon which the party did not prevail. *Graciano v. Robinson Ford Sales, Inc*., 144 Cal. App. 4th 140, 161 (2006). It is improper, however, to limit a fee award under the Song Beverly Act to a percentage of the prevailing party's recovery. *Id*. at 164.

The "[l]odestar analysis is generally the same under California law and Federal law." *Rodriguez v. Cnty. of Los Angeles*, 2014 WL 8390755, *2 (C.D. Cal. Dec. 29, 2014).

### B. Lodestar Amount

Plaintiffs have provided time sheets reflecting the time they spent on this litigation, broken down by specific task. Mikhov Decl., Ex. A. The timesheets reflect the following time billed by the attorneys who worked on the case: 1) Associate Alastair Hamblin, who billed 23.7 hours at a

5

rate of $325/hour;[4] 2) Partner Amy Morse, who billed 9.6 hours at a rate of $350/hour; 3) Associate Deepak Devabose, who billed 10.4 hours at a rate of $250/hour; 4) Associate Hadi Gerami, who billed 12.8 hours at a rate of $350/hour; 5) Associate Russell Higgins, who billed 12 hours at a rate of $400/hour; and 5) Partner Steve Mikhov, who billed 8.3 hours at a rate of $500/hour. The Court has reviewed the timesheets provided and finds that the time billed is reasonable. Indeed, with the exception of the time billed for the August 25, 2018 settlement conference, FCA does not argue that the overall time spent on this action was unreasonable or challenge any specific time entries in the billing records provided by Plaintiffs' counsel.

Next, the Court addresses the reasonableness of the rates requested by Plaintiffs' counsel. The fee applicant has the burden of producing satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation. *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987). As a general rule, the forum district represents the relevant legal community. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). Fee applicants may provide affidavits of practitioners from the same forum with similar experience to establish the reasonableness of the hourly rate sought. *See, e.g., Mendenhall v. Nat'l Transp. Safety Bd.,* 213 F.3d 464, 471 (9th Cir. 2000); *Jones v. Metro. Life Ins. Co.*, 845 F. Supp. 2d 1016, 1024–25 (N.D. Cal. 2012). Decisions by other courts regarding the reasonableness of the rate sought may also provide evidence to support a finding of reasonableness. *See Widrig v. Apfel*, 140 F.3d 1207, 1210 (9th Cir. 1998) (holding that a rate set by the district court based, in part, on the rate awarded to same attorney in another case, was reasonable).

A number of courts, including courts in this District, have also found that the United States Consumer Law Attorney Fee Survey Report may be used as evidence of prevailing rates. *See Klein v. Law Offices of D. Scott Carruthers*, No. C15-00490 CRB, 2015 WL 3626946, at *3 (N.D. Cal. June 10, 2015) ("A number of district courts have considered the Report to be valid evidence

---

[4] Although the timesheets reflect total hours billed by Hamblin as 39.6 hours, that amount includes 15.9 hours billed in connection with the settlement conference that did not occur. *See* Mikhov Devl., Ex. A (timesheets) at 4. As Plaintiffs concede that they are not entitled to fees for that time, the Court has adjusted Hamblin's hours accordingly.

of prevailing hourly rates in FDCPA and Rosenthal Act cases"); *Brown v. Mandarich Law Grp., LLP*, No. 13-CV-04703-JSC, 2014 WL 1340211, at *2 (N.D. Cal. Apr. 2, 2014), adhered to on reconsideration, No. 13-CV-04703-JSC, 2014 WL 2860631 (N.D. Cal. June 23, 2014) (relying on Survey Report as starting point for determining reasonable hourly rate); *Garcia v. Resurgent Capital Servs.*, L.P., No. C-11-1253 EMC, 2012 WL 3778852, at *2 (N.D. Cal. Aug. 30, 2012) (noting that hourly rate of $400/hour was reasonable based, in part, on Survey Report rate reflecting that average rate for California as a whole was $412 and pointing to the higher cost of living in the San Francisco Bay area). With these principles in mind, the Court addresses the reasonableness of the rates sought for each of Plaintiffs' attorneys who billed for work performed in this action.

Steve Mikhov: According to his declaration, Mikhov was admitted to the California Bar in 2003 and he has practiced consumer law since that time. Mikhov Decl. ¶¶ 21-22. In support of the requested rate of $500/hour he points to: 1) billing rates of various attorneys who practice consumer and lemon law, Mikhov Decl. ¶ 32; 2) various fee award decisions by other courts; and 3) the United States Consumer Law Attorney Fee Survey Report ("Survey Report"), Mikhov Decl. ¶ 79 & Ex. WW. The Court declines to rely on the billing rates of other attorneys listed in paragraph 32 of the Mikhov Declaration. Mikhov states in his declaration that these rates are based on "a canvas of the community of attorneys who specialize in this area" but does not explain who conducted this "canvas" or provide any information about how it was conducted; Plaintiffs' counsel represented to the Court at the motion hearing that Mikhov conducted the "canvas." The Court concludes that the information set forth in paragraph 32 is not reliable and therefore disregards the rates set forth therein. If Plaintiffs seek to establish that their rates are reasonable based on the rates charged by other attorneys who practice consumer law, they must provide declarations from those attorneys attesting to their rates and to the reasonableness of the rates requested by Plaintiffs' counsel. Even if the Court were to consider the statements in paragraph 32, they shed little light on the reasonableness of the rates Plaintiffs seek. Only two of the attorneys listed in that paragraph practice in the San Francisco Bay area (Brian Kemnitzer and Nancy Barros) and both have been practicing consumer law for approximately 35 years, that is,

significantly longer than any of Plaintiffs' attorneys have practiced law and more than twice as long as Mikhov has practiced.

Plaintiffs have also provided numerous fee award decisions to show that Mikhov's rate is reasonable.[5] While many of these decisions were issued by courts outside of the San Francisco Bay area, which is the relevant forum, it is nonetheless notable that courts throughout California have routinely (though not uniformly) awarded Mikhov his $500/hour hourly rate. *See, e.g.,* Mikhov Decl. ¶34 & Ex. D (2018 Ventura County Superior Court order awarding Mikhov $500/hour in case against FCA); *id*. ¶ 35 & Ex. E (2018 Tulare County Superior Court order awarding Mikhov $500/hour); *id*. ¶38 & Ex. H (2017 Los Angeles County Superior Court order awarding Mikhov $500/hour); Ex. J (same); *id.*, ¶ 47 & Ex. Q (same); *id*.¶ 48 & Ex. R (2017 Kern County Superior Court order awarding Mikhov $500/hour); *id*. ¶ 51 & Ex. U (2017 San Diego County Superior Court order awarding Mikhov $500/hour); *id.* ¶ 53 & Ex. W (2016 Santa Barbara County Superior Court order awarding Mikhov $500/hour). As judges in this District have observed, the prevailing rates charged in the San Francisco legal market are among the highest in the state, making it unlikely that Mikhov's rate, which has been found reasonable in numerous jurisdictions, is higher than the prevailing rate in the San Francisco Bay area. *See Brown v. Mandarich Law Grp., LLP*, No. 13-CV-04703-JSC, 2014 WL 1340211, at *2 (N.D. Cal. Apr. 2, 2014), adhered to on reconsideration, No. 13-CV-04703-JSC, 2014 WL 2860631 (N.D. Cal. June 23, 2014) (finding that prevailing rates in San Francisco would be significantly higher than the rates for the State of California as a whole based on the fact that federal government's locality pay differential is higher for San Francisco than anywhere else in the state); *Garcia v.*

---

[5] The Court overrules FCA's objections to the legal decisions attached to the Mikhov Declaration, which are frivolous. It is well established that decisions by other courts addressing prevailing rates may be considered to determine the reasonableness of rates requested on a fee motion. The Court further finds FCA's unsupported accusation that Plaintiffs' counsel violated the duty of candor to the Court to be unfounded. Plaintiffs included decisions that reduced some of the rates they requested and declined to award a multiplier, contradicting FCA's assertion. *See, e.g.,* Mikhov Decl., Ex. S (2017 decision by the Monterey County Superior Court reducing Mikhov's rate to $450/hour). Moreover, to the extent other courts have declined to award the rates Plaintiffs seek, FCA was entitled to offer rebuttal evidence – including cases it contends support lower rates. *See Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001) ("The defendant may introduce rebuttal evidence in support of a lower hourly rate."). FCA did not do so.

8

*Resurgent Capital Servs.*, L.P., No. C-11-1253 EMC, 2012 WL 3778852, at *2 (N.D. Cal. Aug. 30, 2012) (noting that hourly rate requested in that case was reasonable based, in part, on statewide average rate reflected in Survey Report and higher cost of living in the San Francisco Bay area). Further, in at least one case decided by the San Francisco Superior Court, it appears that Mikhov was awarded his regular hourly rate of $500/hour. *See* Mikhov Decl. ¶ 61 & Ex. EE (*Yerbic v. Ford Motor* Company, Case No. CGC-13-533092, Dec. 1, 2015 Order) (awarding almost full requested lodestar in case where Mikhov requested fees at a rate of $500/hour).

Plaintiffs also rely on the United States Consumer Law Attorney Fee Survey Report 2015-2016 ("Survey Report") to show that their rates are reasonable. *See* Mikhov Supp. Decl., Ex. A (Survey Report). The Survey Report reflects that the average hourly rate for consumer law attorneys in California with 11 to 15 years' experience is $443/hour. *Id.* at 43. The median rate for California consumer lawyers who handle vehicle cases is $463/hour. *Id.* In addition, the Metropolitan area tables for San Francisco contained in the Survey Report reflect an average hourly rate for consumer attorneys in San Francisco with 11 to 15 years' experience of $495/hour. *Id.* at 190. These average rates are in line with Mikhov's rate of $500/hour, which the Court finds to be reasonable.

<u>Russell Higgins</u>: Higgins graduated from Pepperdine law school and was admitted to the California Bar in 2003. Mikhov Decl. ¶ 29. He is an associate with Knight Law. The hourly rate he seeks in this case of $400/hour has been awarded by courts in several California jurisdictions. *See* Mikhov Decl., Ex. D (2018 decision by Ventura County Superior Court awarding Higgins $400/hour); Ex. E (2017 decision by Tulare County Superior Court awarding Higgins $400/hour); Ex. H (2017 decision by Los Angeles County Superior Court awarding Higgins $400/hour). This rate is also consistent with the rates reflected in the Survey Report, discussed above. Therefore, the Court finds that the rate of $400/hour for Higgins is reasonable.

<u>Amy Morse</u>: Morse graduated from Loyola Law School and was admitted to the California Bar in 2013. Mikhov Decl. ¶ 26. She has been an associate with Knight Law since that time. In 2012, prior to her admission to the Bar she was a law clerk at Knight Law. *Id.* The hourly rate of $350/hour requested for Morse has been awarded by courts in numerous California jurisdictions.

9

*See* Mikhov Supp. Decl., Ex. C (2018 decision by Kern County Superior Court awarding Morse $350/hour); Ex. D (2018 decision of Merced County Superior Court awarding Morse $350/hour); Ex. E (2018 decision of San Diego County Superior Court awarding Morse $350/hour); Ex. F (2018 decision of Madera County Superior Court awarding Morse $350/hour); Ex. G (2018 decision of Merced County Superior Court awarding Morse $350/hour); Ex. H (2018 decision of San Diego County Superior Court awarding Morse $350/hour); Ex. I (2018 decision of San Luis Obispo County Superior Court awarding Morse $350/hour); Ex. J (2018 decision by Los Angeles County Superior Court awarding Morse $350/hour); Ex. K (same); Ex. L (2018 decision of Riverside County Superior Court awarding Morse $350/hour); Ex. M (2018 decision of San Bernadino County Superior Court awarding Morse $350/hour). As discussed above, the prevailing rates in the San Francisco Bay area are among the highest in the state. Therefore, the fact that courts in many California jurisdictions have found that Morse's rate of $350/hour is reasonable supports the conclusion that it is reasonable in this district as well.

<u>Hadi Gerami</u>: Gerami was admitted to practice law in 2002 and is "associated with" Knight Law's Lemon Law practice. Mikhov Decl. ¶ 30. According to Mikhov, Gerami has "gained experience in such specialties as insurance defense corporate litigation since graduating from Southwestern University School of Law." *Id*. Following the motion hearing, Plaintiffs filed a declaration by Gerami stating that he has been practicing law continuously since he passed the bar exam in 2002 and has worked as a contract attorney since 2004. Gerami Decl. ¶¶ 2-10. He has worked exclusively for Knight Law, as a contract attorney, since 2017. *Id*. ¶ 11.

The hourly rate of $350/hour requested for Gerami has been awarded by courts in several California jurisdictions. *See* Mikhov Supp. Decl., Ex. E (2018 decision of San Diego County Superior Court awarding Gerami $350/hour); Ex. J (2018 decision by Los Angeles County Superior Court awarding Gerami $350/hour); Ex. M (2018 decision of San Bernadino County Superior Court awarding Gerami $350/hour). As discussed above, the prevailing rates in the San Francisco Bay area are among the highest in the state. Therefore, the fact that courts in many California jurisdictions have found that Gerami's rate of $350/hour is reasonable supports the conclusion that it is reasonable in this district as well.

Alastair Hamblin: Hamblin graduated from Southwestern Law School in 2007 and has been an associate with Knight Law since 2016. Mikhov Decl. ¶ 27. Plaintiffs seek a rate of $325/hour for Hamblin. *Id*. Plaintiffs have provided two fee award orders finding that a rate of $325/hour is reasonable for Hamblin. *See* Mikhov Supp. Decl., Ex. E (2018 decision of San Diego County Superior Court awarding Hamblin $325/hour); Ex. I (2018 decision of San Luis Obispo County Superior Court awarding Hamblin $325/hour). Further, Mikhov states that prior to joining Knight Law in 2016 Hamblin practiced "general commercial, insurance, products liability, and environmental law defense for four years," indicating that Hamblin has at least six years of experience, including two years in the area of consumer law. Mikhov Decl. ¶ 27. As the Survey Report indicates that average rate for a consumer law attorney in the San Francisco Bay area with 6-10 years' experience is $396.00, *see* Survey Report at 190, the Court finds that the rate of $325/hour that is requested for Hamblin is reasonable.

Deepak Devabose: According to Mikhov, Debavose was admitted to the California Bar in 2014 and has been working for Knight Law since 2016. Mikhov Decl. ¶28. Plaintiffs have provided three fee award orders finding that a rate of $250/hour is reasonable for Devabose. *See* Mikhov Supp. Decl., Ex. D (2018 decision of Merced County Superior Court awarding Devabose $250/hour); Ex. K (2018 decision by Los Angeles County Superior Court awarding Devabose $250/hour); Ex. L (2018 decision of Riverside County Superior Court awarding Devabose $250/hour). As discussed above, the prevailing rates in the San Francisco Bay area are among the highest in the state. Therefore, the fact that courts in several California jurisdictions have found that Devabose's rate of $250/hour is reasonable supports the conclusion that it is reasonable in this district as well. Further, the Survey Report metropolitan table for the San Francisco area reflects that consumer law attorneys with 1-3 years' experience receive an average hourly rate of $250/hour. Therefore, the Court finds that the rate requested for Debavose of $250/hour is reasonable.

Based on the hours and rates discussed above, Plaintiffs' lodestar amount, without a multiplier, is $27,092.50.

### C. Whether a Multiplier is Warranted

Both sides ask the Court to adjust the lodestar amount, with FCA arguing that the Court should apply a negative multiplier and Plaintiffs requesting a positive multiplier of 1.5. The Court concludes that neither is warranted.

While it does not appear that this case involved any issues that were particularly novel or complex, counsel obtained an excellent result for Plaintiffs. Therefore, a negative multiplier is not appropriate. On the other hand, the Court also does not find that an enhancement is necessary. Plaintiffs point to the risk associated with counsel representing them on a fully contingent basis, as well as the delay in obtaining compensation because of the contingent representation arrangement.[6] Yet attorneys' fees are guaranteed to prevailing parties under the Song Beverly Act and based on Plaintiffs' description of the facts, they had a strong case, making the risk that counsel would receive nothing relatively small. As to the delay, the Court concludes that the rates that it has awarded are sufficient to compensate counsel for the cost of any delay in receiving their attorney fees arising from the contingent fee arrangement. Therefore, the Court awards the lodestar amount without a multiplier, negative or positive, which it finds to be a reasonable amount in light of all the circumstances.

### D. Costs

Plaintiffs seek $2,385.39 in costs. *See* Amended Bill of Costs (Docket No. 91). These costs fall into the following categories: 1) Court filing fee ($450); 2) fees for service of summons and deposition subpoenas ($649.85); 3) Fees for messenger service related to court filings ($76.55); 4) a mediation charge ($89.29)[7]; and 5) travel expenses for counsel to attend two case management conferences in the case ($1,119.70). FCA does not challenge these costs, which the

---

[6] FCA argues in its Opposition that Plaintiffs have not provided a copy of the retainer agreement and therefore, they have not established that counsel represented them on a fully contingent basis. The court concludes that Mikhov's statement in his declaration that Knight Law represented Plaintiffs on a "fully contingent basis" is sufficient and that Plaintiffs are not required to provide a copy of the retainer agreement to establish that counsel represented them under a contingency agreement. *See* Mikhov Decl. ¶ 8.

[7] The invoice provided in support of this cost shows that $2500 was billed by a mediator for "FCA Matters." The summary of costs says "split w/28 cases." In his supplemental declaration, Mikhov explains that this invoice relates to a mediation session in which the parties attempted to reach agreement as to 28 cases, including this one. Mikhov Decl. ¶ 3.

12

Court finds to be reasonable. *See* Cal. Civ. Code section 1794(d) (providing that a prevailing party is entitled to "costs and expenses . . . determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of [the] action"); *Jensen v. BMW of N. Am., Inc.*, 35 Cal. App. 4th 112, 137 (1995), as modified on denial of reh'g (June 22, 1995) (holding that by including "expenses" in the Song Beverly Act's cost provision, the Legislature intended that the provision would not be limited to the costs that are available under Cal. Code Civ. Proc. Section 1033,5, which defines the items that are generally available to prevailing parties). Accordingly, the Court awards $2,385.39 in expenses and costs.

## IV. CONCLUSION

For the reasons stated above, the Motion is GRANTED in part and DENIED in part. The Court awards Plaintiffs a total of $29,477.89 ($27,092.50 in fees and $2,385.39 in costs).

**IT IS SO ORDERED.**

Dated: October 22, 2018

_____
JOSEPH C. SPERO
Chief Magistrate Judge